UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | 08 CV 1778 |
| v. | ) | |
| | ) | Honorable Joan B. Gottschall |
| DEMETRIUS BARREN | ) | |
| | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S § 2255 PETITION**
**SEEKING TO VACATE, CORRECT, OR SET ASIDE SENTENCE**

Now comes the United States of America, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, and respectfully submits this response to defendant Demetrius Barren's Petition Under 28 U.S.C. § 2255 to Vacate, Correct, or Set Aside Sentence. For the following reasons, the Court should deny defendant's petition.

**I.    Background**

In his section 2255 petition, Barren does not challenge the facts of this case or his conviction. On July 31, 2002, a grand jury returned a five-count indictment against Demetrius Barren, Carl Miller, Julian Bishop, and Kenneth Washington alleging that the defendants participated in a scheme to defraud residential mortgage lenders and charging them with multiple counts of mail and wire fraud. Barren, a real estate investor, purchased dilapidated houses with the intent of immediately reselling them for a profit. Barren then paid real estate appraisers, including co-defendant Washington, to prepare fraudulent appraisals that inflated the true value of the dilapidated properties Barren had purchased.

Barren then sought individuals who would buy the properties at the inflated prices. Barren enticed potential buyers by promising to pay for the rehabilitation of the properties and to pay the first few mortgage payments until the properties began generating rental income. Barren

1

also promised the buyers that they would not have to make a down payment or pay closing costs. Based on these representations, Barren persuaded numerous individuals to buy properties from him, often persuading buyers to purchase two or three properties at a time.

The evidence at trial showed that Barren also made false representations on his real estate contracts with buyers. For example, Barren falsely represented that the buyers had paid thousands of dollars in earnest money, when in fact they had not paid anything and did not intend to pay anything. Barren caused these fraudulent real estate contracts to be prepared for purposes of misleading mortgage lending companies to believe that buyers had made down payments and were financially qualified for mortgage loans. To further effectuate this scheme, Barren provided buyers with money to deposit into their bank accounts to make it appear to lenders that they had sufficient funds to qualify for mortgage loans. After Barren's money was deposited into the buyers' bank accounts, bank employees were asked to sign forms verifying the amounts on deposit in the buyers' accounts. After the verifications of deposit were obtained, Barren directed the buyers to withdraw the money and repay him.

The evidence at trial also showed that Barren referred buyers to certain mortgage brokers, including co-defendants Miller and Bishop, to procure mortgage loans for buyers. Miller and Bishop located mortgage lending companies to finance the purchase of the properties at the inflated prices sought by Barren. Miller and Bishop submitted false and fraudulent documents to these loan companies, including inflated appraisal reports, false verifications of deposit, fabricated employment records, and fraudulent loan applications. The loan applications falsely stated, among other things, that the buyers intended to occupy the properties as their primary residence and that the buyers had made payments toward the purchase of the properties when in fact they had not. Moreover, some of the loan applications overstated the buyers' gross monthly income. As a result of this scheme, many buyers defaulted on their loans, thereby causing losses

to the lenders.

On May 20, 2005, a jury convicted defendant Demetrius Barren of mail and wire fraud charges stemming from his participation in the mortgage fraud scheme. At sentencing, the Court determined the base offense level under the sentencing guideline to be 6, pursuant to USSG §2F1.1. The Court determined that the loss amount attributable to Barren was $808,710, and therefore increased the base offense level by 11 because the loss amount was greater than $800,000, pursuant to USSG §2F1.1(b)(1)(L). The Court also increased the offense level by 4 levels based on Barren's role in the offense and 2 levels because the offense involved more than minimal planning and a scheme to defraud more than one victim. USSG §2F1.1(b)(2); §3B1.1(a). The resulting combined offense level was 23. Barren was in criminal history category II, resulting in a guideline sentencing range of 51 to 63 months imprisonment. On September 22, 2005, the Court sentenced Barren to 51 months in prison and ordered that he pay $860,983 in restitution to the victims of his crimes.

Barren appealed his conviction and sentence and appointed counsel, unable to find any non-frivolous issues, moved to withdraw under *Anders v. California*, 386 U.S. 738 (1967). On March 21, 2007, the Seventh Circuit granted counsel's motion and dismissed Barren's appeal. Barren now petitions the Court under 18 U.S.C. § 2255 to reduce his prison sentence and the amount of restitution ordered by the Court, arguing that both were the result of ineffective assistance of counsel.

**II.   Argument**

    **A.   Barren's challenge to the Court's restitution order is not cognizable in a Section 2255 petition.**

Barren argues that the restitution order imposed by the Court must be reduced because his counsel was ineffective by failing to unearth evidence or raise objections that would have

lowered the restitution amount. The Seventh Circuit, however, has held that "a criminal defendant who [is] in custody [may] not, under § 2255, challenge a restitution order imposed as part of a sentence that also included an incarceration component." *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997). *See also Tinder v. Paula*, 725 F.2d 801, 804 (1st Cir. 1984) (holding that restitution order was "like a fine-only conviction, . . . not a serious restraint on . . . liberty as to warrant habeas relief."). The Seventh Circuit reasoned that a reduced restitution award did not qualify as a "right to be released," as required by section 2255. *Barnickel*, 113 F.3d at 706. Based on the court's holding in *Barnickel*, Barren's challenges to the Court's restitution award must be denied.

  **B.**   **Barren has failed to carry his burden of showing that his counsel's performance was ineffective.**

To prevail on his ineffective assistance of counsel claims, Barren must establish that his counsel's performance (1) was deficient; and (2) that such representation prejudiced his defense. *Precin v. United States*, 23 F.3d 1215, 1218 (7th Cir. 1994) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Deficient performance occurs when counsel's conduct falls below an objective standard of reasonableness. *Id.* at 688. A court assessing counsel's performance must make "every effort . . . to eliminate the distorting effects of hindsight," and the defendant must overcome a presumption that the trial lawyer's decisions were part of a "sound trial strategy." *Id.* at 689. The *Strickland* prejudice requirement necessitates a showing that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *See Bell v. Cone*, 535 U.S. 685, 697-98 (2002). Because Barren has failed to show that his counsel's performance at sentencing was unreasonable, or that he suffered prejudice, the Court should deny his petition.

> **1.    Even if the Court considers Barren's challenge to the restitution award on the merits, his counsel's performance was not ineffective.**

At sentencing, the court ordered Barren to pay $860,983 to the victims of his fraud. Among the victims of Barren's fraud were HomeEq Mortgage Loan Services, Bank of America, and Litton Loan Services. Barren contends that his counsel was ineffective by (1) failing to object to restitution awarded to entities who were not victims of his offenses of conviction; (2) failing to object to the amount of the restitution award; and (3) failing to object to a purportedly incorrect procedure for determining the restitution amount.

A court may order that a defendant pay restitution to "a person directly and proximately harmed as a result of the commission of an offense . . . including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, *any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.*" 18 U.S.C. § 3663(a)(2) (emphasis added). Barren argues that his counsel should have objected to the restitution order because it awarded compensation to victims HomEq Mortgage Loan Services, Bank of America, and Litton Loan Services even though these lenders were not specifically mentioned in the indictment. Specific victims, however, need not be included in an indictment to receive restitution, "especially in a case involving 'as an element a scheme, conspiracy, or pattern of criminal activity.'" *United States v. Rand*, 403 F.3d 489, 494-95 (7th Cir. 2005). In this case, the government presented evidence at sentencing that each of the lenders that received restitution were directly harmed by Barren's criminal conduct. The failure of Barren's counsel to advance what would have been a frivolous argument that was counter to controlling Seventh Circuit precedent was not ineffective assistance.

Barren also argues that his counsel was ineffective for failing to object to the procedures used by the Court to determine the restitution amount. Again, this argument is not cognizable in

a Section 2255 petition. *See Barnickel*, 113 F.3d at 706. Even if the Court addresses Barren's argument, it has no merit. Barren argues that counsel should have presented "ready available" evidence that the $860,983 restitution award sought by the government was incorrect. Specifically, Barren attaches to his petition copies of records that purport to be from the Cook County Recorder of Deeds website that purportedly show that certain victim lenders resold properties or sold loans and, therefore, suffered no loss as a result of defendant's conduct. Petition at 14. Pet. Ex. E.

The documents upon which Barren relies, however, do not support his argument that his counsel was ineffective or that he suffered prejudice. Assuming that the records themselves are genuine, they contain no indication that the Court miscalculated the defendant's restitution amount. The only dollar amounts on these records are handwritten amounts, which are obviously not part of the official Recorder of Deeds records. Barren provides no evidence regarding whose handwriting appears on the documents or its import. Counsel's failure to provide the court with these vague and unauthenticated documents certainly does not give rise to a claim of ineffective assistance of counsel. Moreover, even if counsel should have unearthed documents showing that some of the victim lenders had resold the loans they issued as a result of Barren's fraud, there was no ineffective assistance of counsel. The government argued at sentencing that to determine restitution and loss amount the Court should take the amount of the mortgage loans issued to the buyers of Barren's properties and subtract the purchase prices paid by Barren for the properties. Gov't Version (Pet. Ex. A). This loss calculation formula, adopted by the Court, does not require that the Court determine whether any of the lenders subsequently sold the loans or recovered the properties.

**2.     Barren's counsel was not ineffective at sentencing for failing to object to the loss amount calculated by the Court.**

Barren's second claim is related to his first. He argues that his counsel was ineffective at sentencing by not introducing the purported Recorder of Deeds documents which, he argues, would have lowered the loss amount used for guidelines purposes from $808,710 to $775,210. Pet. at 4-5. Barren has not shown that his counsel's failure to introduce these documents resulted in prejudice. As stated above, the document upon which Barren relies include handwritten notations regarding purported amounts that his victims recovered by selling the fraudulently obtained loans. There is nothing in the record to show where these handwritten notes come from, nor how they would have been useful at Barren's sentencing hearing. Accordingly, Barren has not met his burden of showing that counsel's failure to use these documents constituted ineffective assistance.

Even if the Court were to determine that counsel's failure to introduce these unauthenticated documents at sentencing was ineffective assistance, Barren suffered no prejudice. The government calculated the $808,710 loss by taking into account only twenty of the transactions with which Barren was involved. As the government told the probation office in the government's version of the offense, the loss estimate was conservative because the government did not have complete information for every property transaction conducted by Barren. Pet. Ex. A. There were at least nineteen other fraudulent transactions in which banks suffered losses but that the government did not include in Barren's loss calculation. The information presented to the Court was more than sufficient to justify the conservative loss estimate of $808,710. Moreover, loss amounts do not need to be proven by exacting precision; a "reasonable estimate" will suffice. *See United States v. Spano,* 421 F.3d 599, 608 (7th Cir.2005). In this case, the reasonable estimate was exceedingly conservative. Even if Barren's

7

counsel should have introduced the exhibits Barren now attaches to his petition, he suffered no prejudice.

### III.  Conclusion

For the foregoing reasons, the government respectfully requests that the petition to vacate, correct, or set aside sentence be denied.

                                              Respectfully submitted,

                                              PATRICK J. FITZGERALD
                                              United States Attorney

                                 By:  s/ Steven A. Block

                                              STEVEN A. BLOCK
                                              Assistant United States Attorney
                                              219 S. Dearborn Street, Suite 500
                                              Chicago, Illinois 60604
                                              (312) 886-7647

Dated: June 16, 2008