# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 08 C 1778 |
| | ) | |
| DEMETRIUS BARREN, | ) | Judge Joan B. Gottschall |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Demetrius Barren ("Barren") moved this court pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons explained below, that motion is denied.

## Background

On July 31, 2002, a grand jury returned a five-count indictment against Barren, Carl Miller, Julian Bishop, and Kenneth Washington alleging that the defendants participated in a scheme to defraud residential mortgage lenders and charging them with multiple counts of mail and wire fraud. Barren, a real estate investor, purchased dilapidated houses with the intent of immediately reselling them for a profit. Barren paid real estate appraisers to prepare fraudulent appraisals that inflated the true value of the dilapidated properties Barren had purchased.

Barren then sought individuals who would buy the properties at the inflated prices. Barren enticed potential buyers by promising to pay for the rehabilitation of the properties and to pay the first few mortgage payments until the properties began generating rental income. Barren also promised the buyers that they would not have to make a down payment or pay closing costs. Based on these representations, Barren persuaded numerous individuals to buy properties from him, often persuading buyers to purchase two or three properties at a time.

The evidence at trial showed that Barren also made false representations on his real estate contracts with buyers. Barren caused these fraudulent real estate contracts to be prepared in order to mislead mortgage lending companies into believing that buyers had made down payments and were financially qualified for mortgage loans. Barren provided buyers with money to deposit into their bank accounts to make it appear to lenders that they had sufficient funds to qualify for mortgage loans. After Barren's money was deposited into the buyers' bank accounts, bank employees were asked to sign forms verifying the amounts on deposit in the buyers' accounts. After the verifications of deposit were obtained, Barren directed the buyers to withdraw the money and repay him.

The evidence at trial also showed that Barren referred buyers to certain mortgage brokers, including some of his co-defendants, to procure mortgage loans for buyers. These brokers located mortgage lending companies to finance the purchase of the properties at the inflated prices sought by Barren. The brokers submitted false and fraudulent documents to these loan companies, including inflated appraisal reports, false verifications of deposit, fabricated employment records, and fraudulent loan applications. As a result of this scheme, many buyers defaulted on their loans, thereby causing losses to the lenders.

On May 20, 2005, a jury convicted Barren of mail and wire fraud charges stemming from his participation in the mortgage fraud scheme. At sentencing, the court determined the base offense level under the sentencing guidelines to be 6, pursuant to USSG § 2F1.1. The court determined that the loss amount attributable to Barren was $808,710, and therefore increased the base offense level by 11 because the loss amount was greater than $800,000, pursuant to USSG § 2F1.1(b)(1)(L). The court also increased the offense level by 4 levels based on Barren's role in the offense and 2 levels

because the offense involved more than minimal planning and a scheme to defraud more than one victim. USSG § 2F1.1(b)(2); § 3B1.1(a). The resulting combined offense level was 23. Barren was in criminal history category II, resulting in a guideline sentencing range of 51 to 63 months imprisonment. On September 22, 2005, the court sentenced Barren to 51 months in prison and ordered that he pay $860,983 in restitution to the victims of his crimes.

Barren appealed his conviction and sentence and appointed counsel moved to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). On March 21, 2007, the Seventh Circuit granted counsel's motion and dismissed Barren's appeal. Barren now moves the court to reduce his prison sentence and the amount of restitution ordered by the court, arguing that both were the result of ineffective assistance of counsel.

**Analysis**

Under 28 U.S.C. § 2255, federal prisoners can challenge the imposition or length of their detention if their conviction or sentence has been founded on an error that is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Oliver v. United States*, 961 F.2d 1339, 1341 (7th Cir. 1995); 28 U.S.C. § 2255. If the court determines that any of these errors infected the judgment or sentence, the petitioner's conviction will be vacated or set aside, and the petitioner will be discharged, resentenced, or granted a new trial. *Id.*

Barren urges the court to grant his Section 2255 relief based on several claims of ineffective assistance of counsel. Having reviewed Barren's petition, the court reads his petition as presenting the following ineffective assistance of counsel claims: (1) trial counsel failed to object to the court's calculation of restitution and failed to present evidence that lenders resold properties; (2) trial

3

counsel failed to object to the court's inclusion of certain lenders as "victims" for purposes of calculating restitution; and (3) trial counsel failed to object to the court's calculation of "loss" for purposes of the Federal Sentencing Guidelines and failed to present evidence that lenders resold properties.

To establish ineffective assistance of counsel, Barren must demonstrate: (1) that his attorney's performance was deficient; and (2) that such representation prejudiced his case. *Precin v. United States*, 23 F.3d 1215, 1218 (7th Cir. 1994) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The first element is satisfied by showing that counsel's performance fell below the "objective standard of reasonableness" guaranteed under the Sixth Amendment. *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 687). To satisfy the *Strickland* prejudice element, Barren must demonstrate that it is reasonably likely that, but for his counsel's errors, the decision reached would have been different. *Strickland*, 466 U.S. at 696.

As the government correctly points out, any attempt by Barren to challenge the court's restitution order is not cognizable in a Section 2255 motion. *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997). Even if ineffective assistance of counsel is alleged, "if the restitution order must be changed . . . that change would involve altering the terms or amount of payments and cannot be accomplished via a cause of action based upon 'the right to be released.'" *United States v. Wittmann*, No. 08-C-180, 2008 WL 1924185, at *1 (E.D. Wis. Apr. 29, 2008) (quoting *Zambonino v. United States*, No. 03-CV-4676, 2006 WL 2861957, at *3 (N.D. Ill. Sept. 29, 2006)). Therefore, even when errors in restitution are raised as the basis of an ineffective assistance claim, Section 2255 is not available to challenge an order of restitution. *United States v. Zaragoza*, 16 F. Supp. 2d 1111, 1111 (N.D. Ind. 1998) (internal citations omitted). In this case, claim 1 (which is based counsel's

4

failure to object to the values the court used to calculate restitution) and claim 2 (which is based on counsel's failure to object to certain lenders being included as victims for purposes of restitution), both seek to reduce Barren's restitution award. As a result, claims 1 and 2 are not cognizable under Section 2255.

However, Barren's third claim, which goes to the court's calculation of loss for purposes of the Federal Sentencing Guidelines, is cognizable under Section 2255. *Fuller v. United States*, 398 F.3d 644, 651 (7th Cir. 2005) (discussing Section 2255 petitioner's ineffective assistance of counsel claim based on counsel's failure to object to court's loss calculation). In this claim, Barren argues that had his counsel's performance not been deficient, his loss amount, for purposes of the Federal Sentencing Guidelines, would have been reduced and his sentence would have been shorter. Specifically, he alleges that had his counsel presented evidence that one of the lenders sold the property at 4454 W. Westend (and the court took this into account when calculating restitution), his total restitution amount would have been less than $800,000. This could be significant because, were it true, it would have resulted in his receiving a ten point enhancement rather than an eleven point enhancement, thus resulting in a shorter prison sentence.

As an initial matter, Barren's evidentiary support for his claim is lacking. In an attempt to provide evidence that the lenders resold the properties at issue, he attached to his petition multiple pages printed from the Cook County Recorder of Deeds website. While it appears that Barren attempted to provide a separate printout for each property showing that it had been sold, the printouts themselves fail to identify the address of any property, nor do they provide the amount each property was sold for. The only identification on the printouts of each property and the relevant sale amounts appear in handwritten notations on the printouts. The court has no idea whose handwriting

5

appears on the sheets, nor does it know the source of the handwritten information. Unfortunately for Barren, these documents are unreliable and incomplete, and the court cannot rely on them to support his claim.[1]

Even if the court were to accept Barren's contentions that certain of the lenders sold the properties, Barren's trial counsel's performance was not deficient. According to the relevant Federal Sentencing Guidelines from 1997-1999, "loss is the value of the money, property, or services unlawfully taken[.]" USSG § 2F1.1, cmt. n.8. Where the fraud at issue involves the "misrepresentation of the value of an item that does have some value (in contrast to an item that is worthless)," the loss is the amount the item was overvalued. *Id.* (giving the example: where defendant fraudulently represents that stock is worth $40,000 and the stock is worth only $10,000, the loss is $30,000). Further, "loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information." *Id.* at cmt. n.9.

In determining the victims' loss, the court, for each property at issue, took the mortgage price of each property (which was the fair market value plus the inflated value) and subtracted the price Barren originally paid for the property (an approximation of fair market value), thus arriving at the total amount of mortgage inflation for all properties. What Barren says his counsel should have done is put forward evidence that the lenders resold the properties at a price that was higher than the amount Barren originally paid for the property. He points to one example in particular. In the case

---

[1] The court is mindful of the fact that Barren was incarcerated at the time he accessed these documents, and likely did the best he could with the resources available to him. If the court thought that Barren's claim might be successful, it would have appointed counsel for him to assist him in this matter. However, the court concludes that appointing counsel in this case is not necessary because even if the documents were complete and authenticated, his claim of ineffective assistance of counsel would still fail.

of 4454 W. Westend, Barren asserts that the lender resold this property for $88,500. Barren argues that the court, instead of using the $55,000 amount (which represented the amount Barren originally paid for the property), should have used $88,500 as the fair market value. Then, the court would have subtracted $88,500 from the $108,000 mortgage and concluded that the loss for 4454 W. Westend was $19,500. This conclusion would drop Barren's total restitution amount below $800,000 and would correspondingly drop a point off his enhancements.

The court disagrees. Barren's scheme involved buying dilapidated houses and reselling them quickly. It was reasonable for the court, in order to determine Barren's culpability at the time of the fraud, to conclude that the amount Barren paid for the property was an accurate approximation of the fair market value of the properties only a short time later. *See, e.g.*, *United States v. Radziszewski*, 474 F.3d 480, 487 (7th Cir. 2007) (affirming loss calculation in mortgage fraud case where court concluded that loss calculation should reflect best estimate of property's value at the time of the fraudulent sale). The $88,500 amount relied upon by Barren reflects the fair market value of the property *three years later* when the lender sold 4454 W. Westend in 2000. There is no evidence that the property in question was worth $88,500 at the time of the fraud.

The court rejects Barren's premise for an additional reason. According to comment 8 in USSG § 2F1.1, "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." Even assuming *arguendo* that actual loss, as Barren argues, is $19,500 ($108,000 minus $88,500), the "intended loss" would be greater than the actual loss and should be used for purposes of sentencing. *Id.*; *United States v. Higgins*, 270 F.3d 1070, 1075 (7th Cir. 2001) ("Intended loss analysis, as the name suggests, turns upon how much loss the defendant actually intended to impose on the financial institution."). In this case,

intended loss would equal the difference between the mortgage and the value of the property at the time Barren undertook to defraud the buyers and the lenders. Thus, intended loss would mirror the court's calculation by using the price Barren paid for the property as a reasonable approximation of the value just a short time later when he sold it and when the mortgages were fraudulently obtained.

For both these reasons, the court would not, even if it had been presented with evidence that the lender sold the property, have altered its conclusion with respect to the loss amount. In light of this, the court concludes that Barren's counsel's performance was not deficient, nor could Barren show a reasonable probability that the outcome would have been different had the objections been made.

## Conclusion

For the above reasons, Barren's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody is denied.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: November 21, 2008